# DINSMORE &SHOHL LLP
Attorneys at Law

**CINCINNATI**
1900 Chemed Center • 255 East Fifth Street
Cincinnati, Ohio 45202
Phone (513) 977-8200 • Fax (513) 977-8141
www.dinslaw.com

Jennifer M. Orr
513-977-8364
jorr@dinslaw.com
Also Admitted in Kentucky

March 19, 2002

Carl E. Grayson, Esq.
Sutton Hicks Lucas & Grayson
7801 U.S. Highway 42
Florence, Kentucky 41042-1803

Re: *Rebecca Bybee v. The Procter & Gamble Company, et al.*
United Stated District Court, Southern District of Ohio, Western Division
Case No. C-1-01-623

Dear Carl:

As promised during our Rule 26(f) conference on Tuesday, March 12, 2002, I have enclosed copies of the P&G plan documents that were in effect in 1996. These documents have been bates-stamped for reference purposes.

As we also discussed, once you have had an opportunity to review these documents, we would appreciate your dismissal of the Humana/ChoiceCare, Bethesda, and certain P&G defendants from this lawsuit.

If you have any questions at all, please feel free to contact me.

Very truly yours,

Jennifer M. Orr

JMO/cwc
Enclosures
cc: John E. Jevicky, Esq.

**EXHIBIT 1**

Columbus, OH • Covington, KY • Dayton, OH • Lexington, KY • Louisville, KY • Nashville, TN

# SUTTON, HICKS, LUCAS, GRAYSON & BRADEN

*Attorneys at Law*

Michael T. Sutton*
T. Lawrence Hicks
K. Lance Lucas
Carl E. Grayson*
Roger N. Braden*

E-mail: cgrayson@shlgb.com

Marcus D. Gale
Derek D. Humfleet

March 4, 2002

*Also Admitted in Ohio*

Jennifer M. Orr, Esq.
Dinsmore & Shohl LLP
1900 Chemed Center
255 East 5th Street
Cincinnati, OH 45202

RE:   *Rebecca Bybee v. The Procter & Gamble Company, et al.*

Dear Jennifer:

You have called on several occasions, inquiring as to whether we would dismiss certain defendants from the above matter. As you know and as we have discussed, we were expecting to receive the plan documents, as well as Ms. Bybee's file, with regard to Jarrod Bybee's treatment, but have never received them. Morever, certain defenses were raised in your Answer, not the least of which is failure to name indispensable parties.

Needless to say, until such time as we can review the plan documents, as well as P&G's file with regard to Jarrod Bybee, we are unable to make a decision as to whether or not to dismiss certain parties.

I trust this responds to your inquiry.

Sincerely,

SUTTON, HICKS, LUCAS, GRAYSON & BRADEN

Carl E. Grayson

CEG/cv
cc: Ms. Rebecca Bybee

## Carl E. Grayson

**From:** "Carl E. Grayson" <cgrayson@shlgb.com>
**To:** "ORR, JENNIFER" <JORR@DINSLAW.com>
**Sent:** Thursday, August 15, 2002 5:52 PM
**Subject:** Bybee

Hi Jennifer. In reviewing my file I do NOT see where we ever received the Plan Documents. Can you obtain them for me.

Thanks,
Carl

8/15/02

# SUTTON, HICKS, LUCAS, GRAYSON & BRADEN, PLC
### Attorneys at Law

Michael T. Sutton*
T. Lawrence Hicks
K. Lance Lucas
Carl E. Grayson*
Roger N. Braden*†
Derek D. Humfleet

*Of Counsel*
R. Lanahan Goodman*

*Also Admitted in Ohio
†Board Certified Civil Trial Advocate
By National Board of Trial Advocacy

E-mail: cgrayson@shlgb.com

April 4, 2003

Jennifer M. Orr, Esq.
Dinsmore & Shohl LLP
1900 Chemed Center
255 East 5th Street
Cincinnati, OH 45202

RE:   *Rebecca Bybee v. The Procter & Gamble Company, et al.*

Dear Jennifer:

In reviewing my file in the above matter, I note that in your document marked PD0000124, under Plan documents, it states in paragraph one, "You should know that some plans also have official documents; this Handbook isn't an official document. The official document-not this Handbook-must be used to resolve any question about benefits."

In the past, I have requested such documents. You have assured me, including by correspondence dated March 19, 2002 that the documents which you attached were the only Plan documents which exist.

I am still not convinced that these are the only documents in existence. In particular, I need to know whether the Plan has an official document, as set forth in the Handbook which sets forth the responsibilities of all parties, not the least of which is the plan administrator.

Your prompt response would be greatly appreciated.

Sincerely,

Carl E. Grayson

CEG/mb
cc: Ms. Rebecca Bybee

## Carl E. Grayson

**From:** "Carl E. Grayson" <cgrayson@shlgb.com>
**To:** "ORR, JENNIFER" <JORR@DINSLAW.com>
**Sent:** Friday, April 11, 2003 9:29 AM
**Subject:** Re: Bybee: Document Request

Thank you.

Carl

----- Original Message -----
From: "ORR, JENNIFER" <JORR@DINSLAW.com>
To: <cgrayson@shlgb.com>
Cc: "JEVICKY, JOHN" <JEVICKY@DINSLAW.com>
Sent: Tuesday, April 08, 2003 9:07 AM
Subject: Bybee: Document Request


Carl -

Today I received your correspondence and will look into the issue of whether or not we have given you all documents. I believe I sent you both the "official" documents and the handbook, such that you do have all pertinent documents in your possession. In any event, per your request, I will go back and double-check and let you know.

Jennifer

Jennifer M. Orr, Esq.
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
Direct dial: (513)977-8364
Facsimile: (513)977-8141
E-mail: jennifer.orr@dinslaw.com

*****************************************************************
This electronic message transmission contains information from the law firm
of Dinsmore & Shohl which may be confidential or privileged. The information
is intended to be for the use of the individual or entity named above. If
you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the contents of this information is prohibited. If
you have received this electronic transmission in error, please notify us by
telephone (1-800-934-3477) or by electronic mail (netadmin@dinslaw.com)
immediately.
*****************************************************************

## ADMINISTRATION

### Plan Documents

This Handbook describes the main features of the Company's benefit Plans as of their most recent amendment. It's written in everyday terms and avoids technical terms wherever possible. You should know that some plans also have official documents; this Handbook isn't an official document. The official documents—not this Handbook—must be used to resolve any question about benefits.  ← ✗

You may review the official documents by making a request to your local Benefits Contact. And you may obtain copies of the documents by writing to the plan administrator. A reasonable charge may be made for copying these materials.

### Rights To Benefits

Generally, your benefit from any retirement benefit Plan may not be assigned, sold, transferred, or pledged to a creditor or anyone else. But benefits from a retirement plan may be subject to the terms of any qualified domestic relations order resulting from divorce or separation from your spouse.

### The Future Of Our Plans

Although we expect to continue the benefit Plans described in this Handbook indefinitely, Procter & Gamble, acting through its Board of Directors or Vice President responsible for Human Resources, reserves the right to alter, amend or terminate any Plan. If the Board of Directors alters, amends or terminates the plan, it shall be through formal action either at a Board of Directors meeting or by written consent pursuant to state law. Alternatively, the Vice President responsible for Human Resources may modify or terminate the plan by signing a formal written statement of the alteration, amendment or termination.

If a Plan is terminated and isn't replaced by similar coverage, you'll be told of any conversion rights that apply.

If the Disability Benefit Plan, Optional Disability Insurance Plan, or the Profit Sharing Trust and Employee Stock Ownership Plan should terminate, the money in each Plan may be used only for the benefit of participants and beneficiaries of that particular Plan. Moreover, if the Profit Sharing Trust and Employee Stock Ownership Plan should terminate, benefits earned at the time the Plan ends will become fully vested, but no further benefits will be earned on or after the date the Plan terminates.

Each Plan contains provisions on how the assets will be allocated to participants and beneficiaries; you'll be given details on these provisions if any of these plans should terminate.



EXHIBIT 2

8

PD0000124

KENNETH J. MURPHY
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WEST DIV CINCINNATI

| | |
|---|---|
| JOAN A. HEFFERNAN, ESQ., | Case No. C-1-97-545 |
| Plaintiff, | District Judge Susan J. Dlott |
| v. | ORDER GRANTING |
| UNUM LIFE INSURANCE COMPANY OF AMERICA | PLAINTIFF'S REQUEST TO CONDUCT DISCOVERY |
| Defendant. | |

4819

This matter is before the Court as a result of the conference that the Court held with the parties on October 9, 1997. For reasons set forth more fully below, Plaintiff's request to conduct discovery is hereby GRANTED.

## I. BACKGROUND

Plaintiff Joan Heffernan alleges that in 1994 she developed a neurological disorder that rendered her unable to continue in her employment as an attorney at the law firm of Taft, Stettinius & Hollister ("the Firm") or elsewhere. She submitted a claim to Defendant UNUM Life Insurance Company of America, provider of the Firm's group insurance plan, for long-term disability benefits under that plan. This claim and Plaintiff's subsequent administrative appeal were both denied by Defendant. Plaintiff has brought this action against Defendant pursuant to Section 1132 of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., ("ERISA") in order to recover these benefits, alleging that Defendant's decision was arbitrary and capricious.

1

EXHIBIT 3

The parties dispute what evidence may be examined by the Court in its review of Defendant's decision to deny benefits and if Plaintiff may conduct discovery in this case. Plaintiff seeks to engage in discovery related to what constitutes the administrative record that was considered by Defendant and what motivated and influenced Defendant's decision to deny Plaintiff benefits under the Firm's group insurance plan. Plaintiff also seeks to engage in discovery related to whether Defendant's conduct in denying Plaintiff's claim violated Defendant's statutory standard of care or its obligation to provide Plaintiff with a full and fair review of its initial decision as required by ERISA. See 29 U.S.C. §§ 1104(a), 1133(2).

In addition to Defendant's contention that Plaintiff has been informed of what constitutes the administrative record and of Defendant's rationale in its decision to deny benefits, Defendant asserts that the Court in its review may consider only the evidence that was before the Defendant when the decision was made. Therefore, Defendant concludes, Plaintiff should not be allowed to conduct discovery in this case. Defendant also contends that, since Plaintiff brought this action pursuant only to Section 1132, discovery as to other potential claims not yet alleged is barred.

## II. ANALYSIS

The scope of discovery is within the discretion of the trial court. Coleman v. American Red Cross, 23 F.3d 1091, 1096 (6th Cir. 1994). However, the Sixth Circuit has limited the evidence that a court may consider in cases where a plaintiff seeks review of a decision to deny him or her benefits pursuant to Section 1132 of ERISA. The Court of Appeals has found that in reviewing whether a benefits administrator has made a correct decision, a district court should receive and consider only the evidence presented to that administrator. Perry v. Simplicity Engineering, 900 F.2d 963, 966 (6th Cir. 1990). To review a decision based upon more than the

2

record before an administrator would "frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme." Id.

Defendant contends that this precludes Plaintiff from conducting any discovery and this Court from considering the results of any such inquiries. This Court disagrees. Plaintiff in part seeks through its discovery to determine what is the administrative record upon which Defendant made its decision and upon which this Court should base its review. Discovery and consideration of evidence about what constitutes the administrative record is fundamentally different than discovery and consideration of evidence with regard to the merits of Plaintiff's claim beyond that administrative record. See Recupero v. New England Telephone and Telegraph Co., 118 F.3d 820, 830 (1st Cir. 1997). This Court's review of denial of benefits should be based upon the administrative record before Defendant at the time of its decision. Therefore, determination of what is and what is not a part of that administrative record is a necessary, preliminary question. Plaintiff may conduct discovery upon this question.

Plaintiff also seeks to conduct discovery with regard to influences upon Defendant and Defendant's motivations and rationale in denying Plaintiff's claim for benefits, based upon an alleged conflict of interest affecting Defendant's ability to make an objective decision. While Sixth Circuit precedent has generally limited a court's review, and necessarily discovery, of a decision denying benefits to the evidence previously presented to a plan's administrator, no Sixth Circuit decision under ERISA has addressed this issue directly when a conflict of interest has been alleged. However, it has been acknowledged that a conflict of interest can be "substantial" and it is a factor that should be weighed by the district court in reviewing a decision to deny benefits. Miller v. Metropolitan Life Insurance Co., 925 F.2d 979, 984 (6th Cir. 1991).

3

It is therefore appropriate when, in a case such as this, a conflict of interest has been alleged to allow discovery related to the influences upon, and motivations and rationale of a defendant's decision. Cf. Zinn v. UNUM Life Insurance Company of America, No. 96-CV-74332-DT, 1997 WL 610759, at *10 n.13 (E.D. Mich. Sept. 29, 1997) (additional evidence may be considered in ERISA cases where conflict of interest exists in order to insure comprehensive and impartial review). To allow discovery and consider evidence on this issue is in fact necessary in order for this Court to properly weigh any conflict of interest as a factor in its review of Defendant's decision to deny benefits. For this reason, Plaintiff may conduct discovery of Defendant with regard to any influences upon, and motivations and rationale underlying Defendant's decision to deny Plaintiff's claim for disability benefits.

Finally, Plaintiff seeks to conduct discovery with regard to whether Defendant violated its statutory standard of care in its decision to deny benefits or failed to provide a full and fair review of its initial decision as required by ERISA. Defendant contends that since these potential claims were not alleged in the Complaint, discovery upon them is barred. Civil Rule 26(b)(1), which governs the scope of allowable discovery, provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). This phrase is to be construed broadly. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "[M]atter that is relevant to anything that is or may become an issue in the litigation" is discoverable. Id., n.12. (internal citation and quotes omitted). Under this standard, the discovery sought by Plaintiff with regard to Defendant's possible failure to fulfill its statutory obligations is clearly relevant to this action challenging Defendant's decision to deny benefits and may be conducted.

4

## III. CONCLUSION

For reasons set forth above, Plaintiff's request to conduct discovery is hereby

**GRANTED.**

**IT SO ORDERED.**

Date: 11/4/97

Susan J. Dlott
United States District Judge

132 F.3d 33 (Table)
**Unpublished Disposition**

(Cite as: 132 F.3d 33, 1997 WL 778410 (6th Cir.(Ohio)))

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Mettie LEWIS, Plaintiff-Appellant,
v.
ST. LUKE'S HOSPITAL ASSOCIATION, Administrator, and St. Luke's Hospital Association of Cleveland, Ohio Pension Plan, Defendants-Appellees,

No. 96-4147.

Dec. 9, 1997.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO; 05-02509 MATIA

Before LIVELY, ENGEL, and NELSON, Circuit Judges.

NELSON, Circuit Judge.

**1 This is an appeal from a summary judgment for the defendants in an action to recover disability benefits allegedly due under a pension plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. The plan provided for the payment of disability retirement benefits where an eligible employee's employment was terminated due to total and permanent disability prior to his normal retirement date, but not where the employee became disabled after termination of his employment for other reasons.

The question presented to the plan administrator here was whether disability benefits should be paid to a laid-off employee who became disabled some months after the abolition of her job in a corporate restructuring, but before the expiration of her recall rights under a collective bargaining agreement. Interpreting the plan to mean that such a person ceased to be an eligible employee when laid off, the administrator answered this question in the negative.

Although the plan gave the administrator broad discretionary authority to construe the plan's terms and determine eligibility for benefits, the administrator's discretionary acts were required to be "uniform in their nature and application to all those similarly situated...." In an effort to determine whether the uniformity requirement had been complied with, the plaintiff sought discovery of the files on some 38 other individuals who had been granted or denied disability pensions. The district court refused to allow such discovery except insofar as the files of two such individuals were concerned. The court subsequently held that the defendants were entitled to summary judgment, the administrator not having been arbitrary or capricious in her determination that the plaintiff was not an eligible employee when she became disabled.

If the administrator's rejection of the plaintiff's claim for disability benefits was not inconsistent with the handling of any claims that might have been presented by persons situated similarly to the plaintiff, we agree that the court had no basis for second-guessing the administrator. On the record before us, however, we believe that the district court abused its discretion in declining to allow the plaintiff broader discovery with respect to the uniformity issue. We shall therefore vacate the summary judgment and remand the case with instructions to permit additional discovery regarding such claims for disability retirement benefits as may have been submitted by other employees laid off prior to becoming disabled.

I

The plaintiff, Mettie Lewis, began working at St. Luke's Medical Center in Cleveland, Ohio, in March of 1972. In January of 1994 she was laid off in connection with a large-scale reduction in force. The position she occupied at the time of her layoff was abolished.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

EXHIBIT 4

Under a collective bargaining agreement to which St. Luke's was a party, Ms. Lewis had recall rights lasting for a period of eighteen months after the layoff. When a job for which she was qualified became open, she had bidding rights on the job superior to those of people with lesser seniority. Although Ms. Lewis was contacted by St. Luke's about a number of vacant positions between January and August of 1994, her recall rights were never exercised.

**\*\*2** Shortly after she was laid off, Ms. Lewis applied for Social Security disability benefits on the basis of "back problems, high blood pressure, asthma, psychological problems, diabetes, vision problems, and circulation problems." The Social Security Administration eventually granted the application, fixing the onset of disability at September 1, 1994. Ms. Lewis was awarded Social Security disability benefits from and after that date.

In February of 1995 Ms. Lewis applied to the St. Luke's Medical Center Pension Plan for disability retirement benefits under the terms of the plan. The plan provided for the payment of such benefits to individuals "whose employment ... is terminated due to [their] Total and Permanent Disability prior to [their] Normal Retirement Date[s] and who [are] awarded disability benefits under the Social Security Act...."

Jacqueline Forestall, the plan administrator, denied Ms. Lewis's application. She gave two reasons for doing so: (1) Ms. Lewis's "employment was terminated due to a layoff and not because of disability;" and (2) "[A]t the time that [Ms.] Lewis was determined to be totally and permanently disabled so as to be eligible for disability benefits under the Social Security Act, she was not an employee of St. Luke's."

After denial of a request for reconsideration, Ms. Lewis filed an ERISA action in federal district court seeking disability retirement benefits under 29 U.S.C. § 1132(a)(1)(B). During discovery, Ms. Lewis obtained the personnel files of two other women who had been laid off at the same time she was and who had applied for disability pensions under the plan. Ms. Lewis was interested in these files because of the plan provision requiring that discretionary acts of the plan administrator "be uniform in their nature and application to all those similarly situated...."

One of the women in question, Elaine Orsic, had been blind throughout her tenure at St. Luke's. Because Ms. Orsic was permanently disabled at the time she was hired, the Social Security Administration considered her to be eligible for disability benefits under the Social Security Act as of the date of the layoff, January 11, 1994. The Pension Plan awarded Ms. Orsic disability retirement benefits as of that date, and Ms. Lewis contends that the Plan ought to have awarded such benefits to her (Ms. Lewis) as well, she and Ms. Orsic having been "similarly situated." For reasons suggested by the district court in rejecting this contention, we believe it was open to the plan administrator to find that Ms. Lewis and Ms. Orsic were not similarly situated. (Ms. Lewis does not argue that the other woman whose personnel file she obtained was similarly situated.)

Prior to the discovery cut-off date established by the court, Ms. Lewis sought production of the files on all remaining applicants for disability retirement benefits. Ms. Lewis asked initially to take the deposition of the plan administrator, Ms. Forestall, at a time and place where the files could be made available for inspection. The defendants refused to agree to this, so pursuant to Local Rule 8:7.4 (now renumbered as Local Rule 37.1) the lawyers conferred with the court by telephone. For reasons not disclosed in the record, the court apparently indicated that the plaintiff would not be allowed access to any of the additional files.

**\*\*3** Ms. Lewis then filed a timely written memorandum in support of a motion to compel discovery. She subsequently served a deposition notice *duces tecum*, directing Ms. Forestall to produce the files at her deposition.

On the day of the deposition, June 11, 1996, defense counsel filed a motion for a protective order to block production of the files. The district court responded with a marginal entry the body of which read, in its entirety, as follows: "Granted: It is so ordered." The order was entered on September 19, 1996, the same day that the court entered summary judgment for the defendants.

Ms. Lewis appeals from the summary judgment and the granting of the motion for a protective order. We conclude that before ruling on the motion for summary judgment, the district court ought to have allowed Ms. Lewis to inspect the files in question.

II

Rule 26(c), Fed.R.Civ.P., provides in part as follows: "Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, *and for good cause shown,* the court in which the action is pending ... *may make any order which justice*

*requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ....*" (Emphasis supplied.)

The burden of establishing good cause for such an order rests with the movant. *General Dynamics Corp. v. Seib Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied*, 414 U.S. 1162 (1974); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035 (1994 & Supp.1996). The district court has broad discretion to grant or deny protective orders, but such discretion is "limited by the careful dictates of Fed.R.Civ.P.26." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir.1996). Our inquiry, then, is whether the district court abused its discretion in granting the protective order at issue here. *Cf. Rolex Watch U.S.A. v. Crowley*, 74 F.3d 716, 722 (6th Cir.1996).

Ms. Lewis, as the brief she filed with the district court explained, "sought discovery of the Pension and Personnel files of all persons being granted and/or denied disability pensions under the Plan in order to determine whether the Plan was exercising its discretion in a uniform manner as required by the plan documents." The defendants argue that the information sought by the plaintiff was not relevant. We disagree.

As mentioned above, the plan under which Ms. Lewis was applying for disability retirement benefits provides that "[a]ny discretionary acts to be taken under the terms and provisions of [t]his Plan by the Administrator shall be uniform in their nature and application to all those similarly situated...." If disability retirement benefits have been awarded to individuals who, like Ms. Lewis, were on layoff status at the time they became disabled, the denial of benefits to Ms. Lewis would seem to lack the uniformity expressly required by the plan's terms.

**\*4** At the oral argument of this appeal, the defendants' counsel was unable to represent to the court that none of the disputed files dealt with a person who claimed to have become disabled while on layoff status. Similarly, the defendants' memorandum in support of the motion for a protective order did not assert that none of the requested files pertained to a "similarly situated" person. The defendants' suggestion that taking oral testimony from the plan administrator would provide an appropriate alternative method of discovery proved to be wide of the mark; Ms. Forestall testified in her deposition that she did not know whether another pension application had ever been submitted by a person who became disabled while on layoff status.

The defendants argued below that the discovery request was overbroad and unduly burdensome, but this argument was supported by little more than generalities. To rebut the presumption in favor of discovery, as the defendants themselves noted in their memorandum in support of the protective order, "the party seeking the protective order must show good cause by demonstrating particular need for protection. Broad allegations of harm unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986). The defendants clearly failed to satisfy the requirements of Rule 26(c), in our view, and in the absence of any explanation by the district court of its reasons for granting the protective order, we can only conclude that the court abused its discretion in doing so.

The summary judgment is VACATED, and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.

132 F.3d 33 (Table), 1997 WL 778410 (6th Cir.(Ohio)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works